THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALYCE ARMSTRONG, Defendant-Appellant.

First District (4th Division)    No. 1—93—0886

Opinion filed June 22, 1995.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Brian Clauss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SHEILA M. O'BRIEN delivered the opinion of the court:

Defendant Alyce Armstrong was indicted for the first degree murder of Leon Thomas. Following a jury trial, she was convicted of second degree murder and sentenced to 12 years' incarceration. On appeal, defendant contends the trial court erred in refusing to admit a certified copy of the victim's murder conviction where the jury received a self-defense instruction. We affirm.

Defendant sold $40 worth of crack cocaine to Shantay Coleman on credit on December 14, 1990. At trial, defendant admitted going to Coleman's apartment three times armed with a handgun to recover the debt. Defendant's third trip to Coleman's apartment was in the early morning hours of December 15, 1990. She was accompanied by Gwendolyn Williams and two other women. Upon arriving at Coleman's apartment, Williams knocked on the door. Leon Thomas, Coleman's fiancé, opened the door and summoned Coleman. Coleman informed defendant she could not pay the debt. An argument ensued. Thomas offered defendant some frozen meat in repayment of the debt. The defendant declined and then either showed Coleman the gun or pulled it from her waistband. Coleman stated she was waiting for her father to arrive with the money and asked Williams to phone him. Defendant told Coleman that Williams would not make the call and ordered Coleman to wait with defendant downstairs for the

money to arrive. Thomas intervened and stated, "You're not going anywhere." The testimony is conflicting as to whom he was intending to address with this statement: Coleman or defendant.

Coleman testified the statement was intended for her. She also testified the defendant threatened to "drop" both her and the victim. Coleman's testimony was substantially corroborated by Williams, who stated defendant threatened to "smoke" Leon Thomas and by defendant who admitted telling him, "You can feel what [Coleman's] going to feel."

According to defendant's testimony, defendant believed Thomas was threatening her because he had backed her into a corner and was looking her in the eye. Defendant stated that while in the corner she continued to have "words" with Coleman, then pulled the gun from her waistband to protect herself from Thomas. Defendant claimed the hammer cocked "accidentally," and as she fumbled with the gun trying to uncock it, the gun discharged.

Thomas received a fatal chest wound.

Defendant was charged with the first degree murder of Leon Thomas. At trial, defense counsel requested the victim's prior murder conviction be admitted into evidence in support of defendant's claim of self-defense. The trial court refused. The jury received IPI Criminal 2d Nos. 24—25.06 and 24—25.09, self-defense instructions, as well as IPI Criminal 2d No. 7.05A (Supp. 1989), commonly known as the failed self-defense second degree murder instruction (Illinois Pattern Jury Instructions, Criminal, Nos. 24—25.06, 24—25.09, 7.05A (2d ed. 1981 and Supp. 1989)). Defendant was found guilty of second degree murder.

Defendant's only argument on appeal is that the trial court erred in refusing to admit a certified copy of the victim's murder conviction in a case where the jury received a self-defense instruction. In support of her argument, defendant relies entirely upon *People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018. In *Lynch*, the Illinois Supreme Court held that "when the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor, and the defendant may show it by appropriate evidence," which may include convictions for crimes of violence. 104 Ill. 2d at 200, 470 N.E.2d at 1020.

We find defendant's reliance on *Lynch* misplaced. *Lynch* applies only where the theory of self-defense is properly raised. (*People v. Isbell* (1988), 177 Ill. App. 3d 854, 886, 532 N.E.2d 964, 971.) It is a question of law whether defendant has produced sufficient evidence to raise the issue of self-defense. *People v. Everette* (1990), 141 Ill. 2d 147, 157, 565 N.E.2d 1295, 1299.

■ An initial aggressor is not entitled to use deadly force in self-defense unless he or she has completely withdrawn from the altercation such that the victim's actions constitute a separate aggression. Ill. Ann. Stat., ch. 38, par. 7—4, Committee Comments—1961, at 402-03 (Smith-Hurd 1989) (now 720 ILCS Ann. 5/7—4, Committee Comments—1961, at 347-48 (Smith-Hurd 1993)).

■ By her own testimony, defendant was the initial aggressor. She testified she went to Coleman's apartment three times, armed with a handgun, to collect a $40 debt. On her third trip, defendant displayed the handgun, slapped Coleman, and threatened Thomas.

By her own testimony, defendant continued to be the aggressor. She testified Thomas offered her food in repayment of the debt, but she refused the offer and began to walk off. Thomas then blocked defendant's exit and came at her with fists raised. As she was backed into a corner by Thomas, defendant stated she continued arguing with Coleman and pulled her gun. There was no testimony Thomas was armed. Even assuming, *arguendo*, the victim prohibited defendant from leaving the scene, he did not prevent her from ceasing hostilities.

Because defendant failed to completely withdraw from the altercation such that the victim's actions constituted a separate aggression, we find the evidence insufficient as a matter of law to raise the issue of self-defense. In so holding, we are mindful that the jury found the defendant guilty of second degree murder based upon a failed self-defense instruction. We do not agree with the trial court's decision to give the self-defense and failed self-defense second degree murder instructions on these facts, but it was an error in defendant's favor and therefore harmless.

Defendant would have us read *Lynch* to require that where the self-defense instruction is given, proper or not, the victim's criminal background must be admitted. We decline to read *Lynch* as stating such a broad proposition. Where, as here, defendant attempted but failed to properly raise the defense of self-defense, *Lynch* does not apply. *Isbell*, 177 Ill. App. 3d at 886, 532 N.E.2d at 971.

Even if *Lynch* did apply, it would be unhelpful. The Illinois Supreme Court explained its holding in *Lynch* by stating that where the victim's propensity for violence is in question, the *danger* of prejudice to the defendant lies in refusing to admit evidence of the victim's prior convictions for violent crimes. (104 Ill. 2d at 201, 470 N.E.2d at 1021.) The court stopped short of holding that refusal to admit such evidence is *per se* prejudicial and, thus, preserved the trial court's discretion to exclude it based upon the facts of each case.

The facts of *Lynch* differ substantially from the case at bar. In

*Lynch* the evidence of what happened was both incomplete and conflicting, but established that "[e]verything happened in an instant" such that the witnesses could only form "quick impressions" of the event. To decide what really occurred, therefore, the Illinois Supreme Court felt the jury needed "all the available facts," including evidence of the victim's criminal background. (104 Ill. 2d at 200, 470 N.E.2d at 1020.) In contrast, evidence in the case at bar was conflicting but not incomplete since the incident was not "instantaneous." Thus, the victim's prior murder conviction was not needed in order for the jury to determine what actually occurred and reach a verdict.

Moreover, in *Lynch* there was evidence the victim, who had been chosen to play a "strongarm" role because he was violent or frightening and expected to behave accordingly, was the aggressor and defendant fired in self-defense. Evidence of the victim's propensity for violence was therefore held admissible to assist the jury in deciding who was the aggressor. (104 Ill. 2d at 200, 470 N.E.2d at 1020.) In contrast, the victim in the instant case was merely present by happenstance and attempting to be a peacemaker while defendant was the aggressor. Consequently, the victim's propensity for violence was not in issue and his prior murder conviction had little or no probative value otherwise.

Because the facts were such that defendant suffered no prejudice, we hold the trial court properly excluded evidence of the victim's prior conviction for a violent crime, though the self-defense instruction was given. This ruling is consistent with *Lynch* and its progeny, which recognize that the trial court retains discretion to consider the nature (*People v. McGee* (1991), 213 Ill. App. 3d 458, 469, 572 N.E.2d 1046, 1053 (victim's prior convictions for theft crimes not admissible)), age (*McGee*, 213 Ill. App. 3d at 469, 572 N.E.2d at 1053 (introduction of victim's old convictions prejudicial)), and representativeness of a conviction (see *Lynch*, 104 Ill. 2d at 206, 470 N.E.2d at 1023 (Ryan, C.J., dissenting) (a single conviction for a violent act is not necessarily evidence of a violent and aggressive character)), and whether such evidence would be cumulative (*People v. Castiglione* (1986), 150 Ill. App. 3d 459, 469, 501 N.E.2d 923, 931 (prior violent crimes need not be admitted where evidence is cumulative)), in determining whether a victim's prior conviction for a violent crime should be admitted into evidence. Indeed, to hold otherwise would create a conflict with the general rule of evidence which vests the trial court with broad discretion in determining whether evidence is relevant and permits its decision to be disturbed on review only where it appears that discretion has been abused. *People v. Ware* (1988), 180 Ill. App. 3d 921, 928-29, 536 N.E.2d 713, 718.

We note that even where evidence of the victim's propensity for violence should have been admitted, reversible error does not always occur if a trial court improperly excludes it. (*People v. Florey* (1987), 153 Ill. App. 3d 530, 539, 505 N.E.2d 1096, 1102.) Thus, even assuming it was error to exclude the certified copy of the victim's murder conviction, we are convinced it was harmless beyond a reasonable doubt in light of the evidence in the record against this defendant.

For the foregoing reasons, we affirm the defendant's conviction for second degree murder. As part of our judgment, we award the State $100 for defending this appeal (*People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194), and an additional $50 for oral argument (*People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319).

Affirmed.

CAHILL and THEIS, JJ., concur.